STATE OF NORTH CAROLINA v. WILLIE SWANN

No. 6914SC313

(Filed 23 July 1969)

**1. Criminal Law § 75— confessions — 1969 retrial of trial begun prior to Miranda**

Where defendant charged with murder confessed to a law officer on 23 May 1964, a jury trial was held in October 1964 to determine defendant's competency to stand trial for the murder and defendant was found to be insane, and defendant was thereafter committed to a State hospital, where he remained until October 1966, trial of defendant in 1969 for the murder is a "retrial" of a "trial" which began in 1964, prior to the effective date of *Miranda v. Arizona,* 384 U.S. 436, and the *Miranda* decision does not govern the admission of defendant's 1964 confession in the 1969 trial.

**2. Criminal Law § 75— confessions — admissibility — 1969 retrial of trial begun prior to Miranda**

In a 1969 "retrial" of a "trial" which began prior to the effective date

of the *Miranda* decision, the trial court did not err in the admission of a
confession made in 1964, notwithstanding the full *Miranda* warnings
were not given to defendant prior to in-custody interrogation which pro-
duced the confession, where the court found, upon competent evidence,
that the confession was voluntarily made after defendant was advised
of his constitutional rights as they then existed.

APPEAL by defendant from *Burgwyn, E.J.,* 27 January 1969 Ses-
sion for the trial of criminal cases in the Superior Court of DURHAM
County.

Defendant was tried upon an indictment, in proper form, charg-
ing him with the felony of murder. Upon the call of the case for
trial, the solicitor announced that he would not seek a verdict of
guilty of murder in the first degree, but would seek a verdict of
guilty of murder in the second degree. Upon a plea of not guilty,
trial was by jury who returned a verdict of guilty of murder in the
second degree. From judgment of imprisonment of not less than 25
years nor more than 28 years the defendant appealed to the Court
of Appeals.

*Attorney General Robert Morgan and Staff Attorney Andrew A.
Vanore, Jr. for the State.*

*Jerry L. Jarvis for defendant.*

BRITT, J.

The record on this appeal is not clear as to all the defendant
contends transpired in his previous trials for the murder of Bee
James prior to the bill of indictment returned at July 1968 Session
of Superior Court of Durham County. Some of it is by stipulation
which appears only in the transcript. In the defendant's brief there
appears what defendant presents as a chronological record of the
history of this case, but since this does not appear in the record on
appeal, it is not set forth in detail herein. At one time this case was
heard by the North Carolina Supreme Court and is reported at
272 N.C. 215, 158 S.E. 2d 80. The records in the Supreme Court
reveal that a warrant charging this defendant with the murder of
Bee James on 20 May 1964 was issued on 25 May 1964, and a bill
of indictment charging the defendant with the murder of Bee James
was returned at the June 1964 Session of Superior Court of Durham
County. The record does not reveal why another warrant was issued
on 14 June 1968 charging the defendant with the murder of Bee
James on 20 May 1964, or why another bill of indictment was ob-
tained at the July Session 1968, although defendant states in his

STATE *v.* SWANN

brief that under the provisions of the North Carolina Post Conviction Hearing Act the defendant, on 14 June 1968, was awarded a new trial by reason of constitutional infirmities in the selection of the grand jury which had returned the bill of indictment against him in June 1964.

The evidence tends to show that Bee James, age 70, was killed in his rural home-store on 20 May 1964, and his body and the building were partially burned, apparently by the perpetrator in an effort to conceal the crime. Investigating officers of the Durham County Sheriff's Office established the fact that a station wagon owned by the defendant, age 26, had been observed at the scene shortly before the crime was committed. The defendant was arrested on 22 May 1964. The arresting officers, two deputies sheriff of Durham County, informed the defendant shortly after his arrest, in the Durham County jail, of his right to remain silent and that anything he said probably would be used against him in court. He was not advised that he was entitled to a lawyer and that if he could not afford a lawyer, the court would appoint one for him. On this occasion the defendant told the officers that he knew the deceased and had been to his house on the day he was killed, but declined to tell them anything else.

The following morning the defendant was taken from his cell by the same officers and again informed of his rights in the same manner as on the previous day. During this questioning the defendant asked to see Detective McCrea and Detective Cox, two officers with the Durham City Police Department, and they were summoned. The defendant stated to these two detectives and later to Deputy Sheriff T. C. Leary, in substance, that he had committed the crime.

At the trial in January 1969, after hearing witnesses in the absence of the jury, the trial judge, among other things, made the following findings:

"On the question of confession that arose, the alleged confession in the opinion of this Court was properly obtained. Also the Court finds upon the question of voir dire of the confession itself that the statements made to Sheriff T. C. Leary by the defendant as testified to by Sheriff Leary were freely, voluntarily, knowingly, and intelligently made, without any threat, inducement, reward, or hope of reward to the Defendant, and after he had been advised of his constitutional rights as they then existed with reference to any statement he might make being used against him. The alleged confession will be admitted."

Thereafter the State's witness, T. C. Leary, was permitted to testify as to what the defendant told him.

Defendant makes only one assignment of error which is to "(t)he action of the Court, in admitting into evidence at the trial in February, 1969, the defendant-appellant's alleged confession to Deputy Sheriff T. C. Leary on May 22, 1964, after finding that the warnings given Swann with reference to his constitutional rights fell short of the requirements established and set forth in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 868 S. Ct. 1602, decided June 13, 1966."

In the case of *State v. Lewis*, 1 N.C. App. 296, 161 S.E. 2d 497 (1968), it is said:

"The investigation of this brutal assault and the interrogation of defendant began in January 1955 — more than 12 years previous to this retrial. The evidence is clear that in 1955 defendant was warned of his constitutional rights in accordance with the requirements then prevailing. The warnings now required by *Miranda* were not included. Defendant concedes that if this case had been tried prior to *Miranda,* the confession involved here would have been admissible. In *Johnson v. New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772, (hereinafter referred to as *Johnson*) it was held that *Miranda* is prospective only in its application. In *Johnson,* the Court said that the *Miranda* 'guidelines are therefore available only to persons whose trials had not begun as of June 13, 1966.' Defendant earnestly contends that the *Miranda* guidelines must be applied. We do not agree. In *State v. Branch*, 1 N.C. App. 279, 161 S.E. 2d 492, opinion filed by Court of Appeals this day, Brock, J., discusses the question exhaustively. We concur in the conclusion that the intent of the Court in *Johnson* and the rationale of the opinion is that the terms 'cases commenced after' and 'trials begun after' encompass the interrogation."

See also *State v. Johnson*, 3 N.C. App. 420, 165 S.E. 2d 27 (1969).

In the case of *State v. Lewis*, 274 N.C. 438, 164 S.E. 2d 177 (1968), the Supreme Court said:

"In our view, *Miranda* should not and does not apply to confessions obtained prior to that decision, when offered at trials or retrials beginning thereafter, where law enforcement officers relied upon and complied with constitutional standards applicable at the time the confessions were made. We perceive a trend towards this conclusion in decisions of the Supreme Court of the United States discussed herein."

Defendant was arrested on Friday, 22 May 1964, and made the inculpatory statement on Saturday, 23 May 1964. This was over two years prior to the date of the *Miranda* decision. The defendant was tried by a jury at the 15 October 1964 Session of Superior Court of Durham County to determine his competency to stand trial on the bill of indictment returned against him. The jury found that the defendant was "insane and without sufficient mental capacity to undertake his defense or to receive sentence in this case."

Defendant, on account of his mental condition, was confined as a patient in Cherry Hospital, a state institution, from 19 June 1964 until October 1966.

We think it is clear that the trial of this defendant for the murder of Bee James commenced in 1964 inasmuch as during the year 1964 he was committed to Cherry Hospital for observation, and thereafter during 1964 the jury was impaneled to determine his ability to plead to the bill of indictment and to stand trial for the crime. It is not necessary for decision in this case to determine, and we therefore do not determine, the exact date in 1964 that his trial commenced.

The trial court found, upon competent evidence, that the statement made by the defendant to Deputy Sheriff Leary was "freely, voluntarily, knowingly, and intelligently made, without any threat, inducement, reward or hope of reward to the Defendant, and after he had been advised of his constitutional rights as they then existed with reference to any statement he might make being used against him."

In *Jenkins v. Delaware,* 395 U.S. 213, 23 L. Ed. 2d 253 (1969), Chief Justice Warren said:

> "In *Johnson v. New Jersey,* 384 U.S. 719 (1966), we held that *Miranda v. Arizona,* 384 U.S. 436 (1966), 'applies only to cases in which the trial began after the date of our [*Miranda*] decision. . . .' 384 U.S., at 721. In this case, we must decide whether *Miranda's* standards for determining the admissibility of in-custody statements apply to post-*Miranda* retrials of cases originally tried prior to that decision. We hold that they do not. * * *
>
> In *Johnson,* after considering the need to avoid unreasonably disrupting the administration of our criminal laws, we selected the commencement of trial as determinative. . . . On the other hand, we could have adopted the approach we took in *Stovall* and *Desist* and made the point of initial reliance, the

moment the defendant is interrogated, the operative event. See W. Schaefer, *supra*, at 646. But in an effort to extend the protection of *Miranda* to as many defendants as was consistent with society's legitimate concern that convictions already validly obtained not be needlessly aborted, we selected the commencement of the trial. Implicit in this choice was the assumption that, with few exceptions, the commission and investigation of a crime would be sufficiently proximate to the commencement of the defendant's trial that no undue burden would be imposed upon prosecuting authorities by requiring them to find evidentiary substitutes for statements obtained in violation of the constitutional protections afforded by *Miranda*."

In a footnote appearing in *Jenkins v. Delaware, supra,* "retrial" is defined thus:

"The word 'retrial' is used in this opinion to refer only to a subsequent trial of a defendant whose original trial for the same conduct commenced prior to June 13, 1966, the day on which *Miranda* was announced."

The crucial question in this case is when does a trial commence. In *Pratt v. Bishop,* 257 N.C. 486, 126 S.E. 2d 597 (1962), the Supreme Court said in interpreting the words "at anytime before trial" which appear in G.S. 8-81 relating to depositions:

"When a trial commences is a difficult question, and the answer may vary according to the statute being construed and according to the circumstances in a particular case. 'In general, it has been held that the trial begins when the jury are called into the box for examination as to their qualifications — when the work of impaneling the jury begins — and that the calling of a jury is a part of the trial.' 53 Am. Jur., Trial, Section 4. Certainly the purpose of G.S. 8-81 would not be served by a holding that the trial did not begin until after the jury was empaneled. Once the case is reached on the calendar and the jury called into the box, 'the hurry of a trial' has begun and the time for deliberation and scrutiny of a deposition has passed."

**[1]** It is not necessary for decision in this case to determine whether the ruling in *Jenkins v. Delaware, supra,* limits the principles of law enunciated in *State v. Branch, supra; State v. Lewis, supra;* or *State v. Johnson, supra,* because we are of the opinion and so hold that under the circumstances this is a "retrial" of a "trial" of the defendant for the murder of Bee James which commenced prior to June 13, 1966, and that therefore *Miranda* does not apply.

**[2]** Applying the principle of law enunciated in *State v. Lewis,* *supra,* and in *Jenkins v. Delaware, supra,* we are of the opinion and so hold that the trial judge did not commit error in admitting the in-custody confession of the defendant made to Deputy Sheriff Leary on 23 May 1964.

No error.

BROCK and PARKER, JJ., concur.